## Brown *against* Brown.

A testator having devised his plantation to his two sons, to be divided between them by a line beginning at a certain point, and running between two certain points, so as to include a given number of acres in one part, it was *held*, that the division line must be straight: and that it was erroneous to submit to the jury as a matter of fact, what the intention of the testator was; the interpretation of the will belonged to the court.

ERROR to *Mifflin* county.

James Brown against Joseph Gourly. Ejectment. The only question in this cause arose out of the construction of the will of Thomas Brown, deceased, respecting the division line of the land devised to his two sons, James and John. That part of his will which related to that subject, was as follows :

" I give and devise to my son, James Brown, one hundred and eighty acres of land where I now live, being part of the mansion tract, and to be run off the west end of said tract, adjoining land of William M'Nitt, deceased, and to include the new house which is now building; and further, he is to have the privilege of bringing the water in pipes from the spring, in the upper end of the meadow, where there is a spring house now built if he thinks proper; and also, he is to have the use of one half of the barn for ten years; or if he should get one built sooner, then he is to give up his half of the barn to my son John Brown. And I further direct and will, that the division line between my two sons, James and John, shall begin somewhere in or on the lane between the heirs of David Neely, deceased, and me, and to run between the house and barn. And I further direct, that my son John shall aid or assist my son James, to build a barn either with work or money, so much as they can agree upon themselves."

" I give and bequeath to my son, John Brown, the residue or remainder of the mansion tract of land where I now live, it being the east end of said tract, and supposed to contain one hundred and fifty-six acres, be the same more or less, and is to include the new barn and mansion house where my son John now lives. And I do will to my son, John Brown, one bay mare and her colt, known by the name of the Stumpy mare. And further, it is my will, that if my son, John Brown, should die without leaving lawful issue, or lawful heirs, then, and in that case, the land I have willed to him, is to be sold, and the money arising from the sale thereof, to be equally divided between the heirs of my daughter Elizabeth, deceased, my daughter Mary, and my son, James Brown, after paying all his just debts and funeral expenses."

The court below submitted, as a matter of fact to the jury, what

[Brown v. Brown.]

the testator intended respecting the division line between the devisees, and instructed them to shape their verdict accordingly.

The jury by their verdict, established the crooked line, as being the most convenient division between the parties.

*A. S. Wilson*, for plaintiff in error.
*Benedict* and *Miles*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—It is unnecessary to notice the several matters in detail, which have been assigned for error, as we are of opinion that the court below decided correctly on all of them, except as to the line of division, which the testator by his will directed should be made of the land between his two sons James and John, which he thereby devised to them. The court submitted it to the jury to put their own construction upon the will in respect to this matter, and to determine therefrom whether the testator intended that the division should be made by a straight line, beginning somewhere in or at the lane on the line of division between the land of the heirs of David Nealy deceased, and the land devised, and running thence between the house and barn then upon the devised land; or otherwise by a line beginning as above, and extending thence to a middle point on a straight line drawn from the house to the barn, and then by another line from this middle point, to such point on the opposite side of the devised land to that of Nealy's lane, as would give to James 180 acres, the quantity given to him by the will. In short, according to the language of the court, it was left to the jury as a question of fact to be decided by them, whether the testator by the terms of his will intended that the division should be made by running a straight line, or a crooked line from Nealy's lane through the tract between the house and the barn, so as to give James 180 acres.

In this we think the court erred. The testator after devising 180 acres of his mansion tract of land to his son James, to be run off of the west end thereof, adjoining the land of William M'Nitt, deceased, so as to include the new house, then being built thereon; and giving in a subsequent part of his will the residue of the said tract, supposed to contain 156 acres more or less, to his son John, he directs in the following terms, " that the division-line between my two sons James and John, shall begin some where in¦ or on the lane between the heirs of David Nealy deceased and me, and to run between the house and barn." Now the line here directed by the testator, to be run, we think must be taken to mean a straight line, as long as it is found to be practicable to make the partition in the manner prescribed by such line. The testator speaks of but one line to be run in making the division, and generally where only one line is mentioned for such purpose, it must be understood to mean a straight line, if such will answer the end:

and not a crooked line, which would necessarily in most cases render the meaning and design very ambiguous and uncertain, if nothing more. In the construction of instruments of writing, precision and certainty are of the first importance: and hence it is, that the law has made it the duty of the court to interpret them, and not to leave it to be done by the jury. In this case, I think it is very apparent, that unless a straight line be adopted and adhered to in making the partition, it would be impossible for the court to give the jury any precise instruction in regard to the making of it. If it is effected by running a straight line from the place of beginning, as designated in the will by the testator, there will be but little room for deviation, by departing and going to the one side or the other of the course pointed out by the will. But if a crooked line, or two lines, instead of one straight line is adopted, it is obvious that many acres of the best or of the worst of the land, if there be any great difference in the quality of different parts of it, which it is said there is, may either be given to the one or the other two sons, or those claiming under them, as the jury may conjecture was the intention of the testator, or in their opinion will be the most accommodating partition of the land between the parties. Besides, if the construction of the will, so far as concerns the division of the land, were to be committed to the discretion and judgment of the jury, to be decided on by them, according to their notion of what might have been the intention of the testator, or of what would be most convenient and fair between the parties, it is very possible that no two juries would agree and make the same decision. Indeed, most likely, that instead of making the intention of the testator, as manifested by the will, their guide for fixing the line of division, they might feel strongly inclined to equalise the bounty of the testator as nearly as practicable between the devisees, believing that it would have been just and equitable in him to have done so.

The only objection arising from the face of the will, which has been urged or mentioned against the testator's having intended that the division should be made by a straight line, and not by a crooked one, is founded upon the circumstance of his having directed it to be run " between the house and barn." It is alleged that, " between the house and barn" means a point between these two places, equidistant from each; that the testator intended this by using them; and for the purpose of carrying his intention into effect, the line of division whether straight or crooked ought to pass through this point. But as this can not be done by a straight line, commencing at any part of Nealy's lane, which is expressly fixed on as the place of beginning, without giving James more than one hundred and eighty acres, therefore it must be done by a crooked line. Now it may be true, that the word " between" in reference to a division to be made of property devised or bequeathed by will, is used almost invariably, perhaps, to denote that equality of divi-

[Brown v. Brown.]

sion or gift is intended, unless the context show otherwise. But then it will be found in every such case, that it was used for the very purpose of establishing equality in the gift among the donees: and instead of creating uncertainty and doubt, as has been shown would be the case here, if such meaning were to be given to it, it furnishes a guide or rule for making the division among those interested, that can not be mistaken. It may also be observed, that it does not appear in this case that the testator aimed at all, at equality in directing the division. It would rather seem, perhaps, that he did not; for he certainly gave the larger quantity of land to James. And having given him a certain specified quantity, to be laid off from the west end of the tract, so as to include the new house, and at the same time wishing to give the barn to John, he, with a view to have this object carried into execution, directed the line of division to be run between them, wherever it might become necessary to do so, after beginning at some point in Nealy's lane, in order to give to James his one hundred and eighty acres. We, therefore, not only think that a straight line was intended by the testator, but that reasonable certainty can not be obtained by any other, which ought never to be lost sight of, as it tends to prevent strife and litigation.

The judgment is reversed, and a *venire facias de novo* awarded.